BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
Assistant United States Attorney
Deputy Chief, Orange County Office
GREGORY W. STAPLES (Cal. Bar No. 155505)
Assistant United States Attorney
Orange County Office
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3532/35
     Facsimile: (714) 338-3708
     E-mail:    gregory.scally@usdoj.gov
                greg.staples@usdoj.gov
CHRISTOPHER MATTHEWS (New Jersey Bar No. 028571998)
GRACE BOWEN (Virginia Bar No. 96894)
Trial Attorneys
United States Department of Justice
Violent Crime and Racketeering Section
     1301 New York Avenue, NW, Suite 700
     Washington, D.C. 20005
     E-mail:    christopher.matthews@usdoj.gov
                grace.bowen2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 8:22-00034-FWS-16 |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT KEVIN TREJO'S MOTION TO COMPEL BRADY MATERIAL (ECF #2081) |
| v. | |
| JOHNNY MARTINEZ, et al., | Hearing Date: December 4, 2025 |
| Defendants. | Hearing Time: 2:30 p.m.<br>Location:     Courtroom of the<br>              Hon. Fred W.<br>              Slaughter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Gregory S. Scally and Gregory W. Staples, and Trial Attorneys Christopher Matthews and

Grace Bowen, hereby files its Opposition to Defendant Kevin Trejo's Motion to Compel <u>Brady</u> Material.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 13, 2025
Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

ALEXANDER B. SCWHAB
Assistant United States Attorney
Acting Chief, Criminal Division

MARK P. TAKLA
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

_____/s/_____
GREGORY S. SCALLY
GREGORY W. STAPLES
Assistant United States Attorneys

Christopher Matthews
Grace Bowen
Trial Attorneys
Violent Crime and Racketeering Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Kevin Trejo seeks to compel the government to produce three items described as Brady material, a videorecording of a statement of Steven Reveles, "underlying" documents related to money given to a trial witness ("Witness-3") against defendant Trejo for temporary relocation expenses, and the entire forensic image of Witness-3's phone. As defendant Trejo's motion seeks items that are not in the possession of the government or law enforcement and fails to make a showing that any of the requested items contain evidence favorable to the defendant, the motion should be denied.

Notably, each of these items was known to trial counsel before trial. Defendant has spent two years since his conviction in an apparent effort to reinvestigate matters that were known to his trial counsel presumably to support his eventual motions for a new trial or acquittal. Defendant cannot prevail on a post-trial motion to compel discovery on issues that were plainly known to his trial counsel. Given the disclosure of these items pre-trial, there was no suppression and therefore no Brady issue. The purpose of post-trial motion for a new trial or acquittal is not for newly appointed counsel to second guess the investigative decisions of trial counsel.

**II.   STATEMENT OF FACTS**

On October 13, 2023, a jury convicted Mike Escobar, James Mendez, and defendant Trejo of the August 21, 2017, VICAR murder of Richard Villeda as charged in Count Five of the First Superseding Indictment. Codefendant Johnny Martinez was severed from the other defendants in Count Five, and his trial is scheduled for August 4, 2026.

During the October 2023 trial, the government introduced evidence against defendant Trejo including, among other things, cell phone location information, surveillance footage of the stolen black Jeep used by Trejo and his codefendants arriving to pick up Mr. Villeda and of the Jeep where they shot him to death, contents of communications about the black Jeep involving defendant Trejo's girlfriend who helped steal the Jeep, contents of communications among defendants Trejo, Escobar, Mendez, Martinez, and other coconspirators, the testimony of two cooperating witnesses, one of whom was Witness-3, video communications between Witness-3 and defendant Trejo, and text messages between Witness-3 and defendant Trejo. Regarding the video messages between Witness-3 and defendant Trejo, the government offered in evidence a video recording of Witness-3's cell phone as it played a stream of communications in chronological order. The government also offered photographs of Witness-3's phone displaying communications with defendant Trejo in chronological order.

Prior to trial, the government disclosed all of the above evidence as well as a 285-page Cellebrite report of Witness-3's cell phone containing communications and data between at least August 10, 2017, and September 15, 2017, both before and after the August 21, 2017, murder, including a little over 2,000 communications, most of which were not pertinent to defendant Trejo or the murder investigation. The government also disclosed a report containing a description of what Witness-3 told the government on September 19, 2023, regarding safety concerns that led to the government providing $3,600 to Witness-3 for Witness-3 to relocate.

The government disclosed a September 2017 Orange police report describing the attempt to locate defendant Trejo that led to the arrest of Steven Reveles. That report described law enforcement finding Mr. Reveles, not Trejo, in a hotel room with drugs and items related to theft and fraud. The report detailed the topics covered in Reveles' statement, none of which involved Trejo or the Villeda murder.

Between May 2025 and August 2025, counsel for defendant Trejo and the government exchanged numerous communications about Witness-3's cell phone. The government confirmed that counsel for defendant Trejo had everything that was in the government's possession regarding the cell phone and advised that the cell phone itself was inoperable. In September 2025, the government advised counsel for defendant Trejo that neither it nor law enforcement possessed a forensic image of the cell phone. In October 2025, the government advised counsel for defendant that neither it nor law enforcement was in possession of a video recording of the statement of Steven Reveles.

Defendant Trejo's sentencing is scheduled for August 6, 2026.

**III. ARGUMENT**

    **A.    The Defendant's Request to Compel Production is Largely Moot.**

The defendant has moved for the Court to compel the government to provide copies of the forensic image of Witness-3's cell phone and the video recording of Reveles' statement. As the government previously informed the defendant, neither of those items are in the possession of the government or law enforcement. Those requests should be denied as moot.

3

**B.   The Motion to Compel Should Be Denied Because the Defendant Fails to Offer Facts Supporting a Finding that the Requested Items Contain Exculpatory Material.**

The government repeatedly has advised defendant that it has no exculpatory material in its possession to disclose. The defendant has offered nothing to support his claim to the contrary. The defendant merely speculates that additional information may exist. He does not offer any basis to conclude that any such information may be exculpatory if it exists. Such baseless speculation is insufficient to support the defendant's requested relief.

Under Brady and its progeny, the prosecution has a duty to disclose evidence favorable to an accused, and the failure to disclose such evidence violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). "The three elements of a Brady violation are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the [government], either willfully or inadvertently; and (3) prejudice must have ensued." United States v. Williams, 547 F.3d 1187, 1202 (9th Cir. 2008) (citation, alteration, and internal quotation marks omitted). "Evidence is material if there is a reasonable probably that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Jackson v. Brown, 513 F.3d 1057, 1071 (9th Cir. 2008) (citation and internal quotation marks omitted).

When challenging the government's representation that it lacks Brady information, the defendant must demonstrate that the government

improperly withheld favorable evidence. United States v. Lucas, 841 F.3d 796, 808 (9th Cir. 2016). "[M]ere speculation about material in the government's files" is not sufficient to merit production. United States v. Mincoff, 574 F.3d 1186, 1200 (9th Cir. 2009) (internal quotation marks and citation omitted). Because Brady is not a discovery device, discovery should not be ordered "based upon mere speculation as to whether the material would contain exculpatory evidence...." United States v. Bell, 321 F. App'x 862, 864 (11th Cir. 2009) (quoting United States v. Arias-Izquierdo, 449 F.3d 1168, 1189 (11th Cir.2006). Even within the Rule 16 discovery context, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990). Defendant has failed to do so.

### 1.   Witness-3's Cell Phone

The defendant has made no showing of the materiality of any additional information that may be extractable from Witness-3's cell phone, if repaired, much less a showing that there is reason to believe the phone contains exculpatory information. The declaration of Mr. Koeberlein in support of defendant's motion makes two claims regarding the content of the disclosed Cellebrite report versus what may remain on Witness-3's phone. First, he states, "if I can get the entire forensic image of Witness-3's phone, I can put that in my own licensed, updated and far more powerful, for an expert, Cellebrite tool and *may* be able to access the Signal messages on that phone."

5

Dkt. 2081-2, ¶ 9 (emphasis added.) He neither claims that additional information regarding these messages will definitely be accessed with this method nor offers a basis to believe exculpatory messages or any messages at all are missing. Second, Mr. Koeberlein states that the Cellebrite items disclosed by the government "were not the entire dump of Witness-3's phone." Again, he offers no specificity as to which files are missing, what they contain, and why there is a reason to believe there is any exculpatory information within those files. As the Ninth Circuit explained, "mere speculation" such as this is insufficient to require production. Mincoff, 574 F.3d at 1200. To the contrary, the available evidence suggests that all of the Signal messages available on Witness-3's phone were captured by the messages between Witness-3 and defendant Trejo introduced as exhibits at trial, as the download of the phone that is available and was produced shows that it was the defendant, whose alias was "Minor," who suggested that Witness-3 use Signal, and the Signal messages used at trial start on the day after he sent Witness-3 a text message saying, "Let's switch to Signal." See Exhibit A (Trial Exhibit 32-Signal messages between Witness-3 and defendant); Exhibit B (page 130 of the Cellebrite report). There is also no evidence whatsoever that the agents "handpicked" the Signal messages and left any out.

Having failed to offer any grounds to support a finding that Witness-3's phone contains undisclosed Brady material, the defendant likewise has not substantiated his request to require the government to attempt to repair the phone and generate a new download from it.

6

Nor has he explained why, two years after trial, he is entitled to discovery on a matter that was already known by his trial counsel. The purpose of post-trial motions for a new trial or acquittal is not to allow a defendant, having lost at trial, a second chance to re-investigate his case via a new round of discovery.[1]

### 2. Witness-3 Relocation Documents

On or about September 27, 2023, approximately one week before trial, the government produced a report to the defendant about a meeting with Witness-3 on September 19, 2023. The report included a description of Witness-3's safety concerns. Witness-3 described a call to Witness-3's mother during which the caller, who later claimed to be an investigator for the defendant, stated that he wanted to get Witness-3 off the case. Additionally, Witness-3's daughter had been followed and chased by a truck, which caused her to feel unsafe and stay somewhere else. Witness-3 explained that he felt like he needed to move for his safety due to the fact that the defendant and the defendant's girlfriend knew where Witness-3 lived and the recent events involving his family. Then, the report explained that the government provided Witness-3 $3,600 to relocate for safety reasons, which Witness-3 did.

In May 2025, the government advised the defendant that it did not possess any additional Brady material regarding the relocation expenses for Witness-3. Despite receiving the above information about

---

[1] Defendant's request that he be given the phone to conduct his own analysis is untenable. The Villeda murder is evidence of the criminal enterprise charged in this case, and thus of potential relevance to the remaining defendants who face RICO Conspiracy or VICAR charges. The government cannot simply release a phone to one defendant when it has relevance to other defendants.

7

what led to the temporary relocation support for Witness-3, the defendant claims that there is insufficient information and only the "underlying documents and any safety and/or risk assessment report" will suffice. Dkt. 2081, at 9. Again, the defendant offers no basis to believe there is exculpatory information in the requested underlying documents. The defendant offers nothing more than mere speculation to challenge the government's assertion that there is no Brady information in any "underlying documents." *See* Mincoff, 574 F.3d at 1200. In light of the disclosed and clearly explained reasons for Witness-3's relocation, there is no support for the defendant's assertion that any additional undisclosed underlying documents about the payment constitute Brady material.

The defendant is entitled to disclosure of the relevant information, not a review of all of the government's files. The Ninth Circuit has upheld the government's provision of summaries of relevant information in lieu of access to informant's files. United States v. Van Brandy, 726 F.2d 548, 551-52 (9th Cir. 1984). The court explained that "[t]he Brady right to access to evidence, favorable to a defendant, and in the prosecution's possession, does not extend to an unfettered access to the files. In order to prove a violation of constitutional due process, defendant must make a showing that: (a) the non-disclosed evidence is material, (b) its content is favorable to defendant, and (c) that such exculpatory evidence has not been included in any report provided to the defendant. Id. at 551. See, e.g., United States v. Henderson, 250 F. App'x 34, 38-39 (5th Cir. 2007) (finding no Brady violation where government provided information about an email between a DEA agent and AUSA in a letter rather than producing the email); United States v. Grunewald, 987

8

F.2d 531, 535 (8th Cir. 1993) (upholding the production of typewritten summaries of an IRS agent's notes to the defense, rather than the notes themselves); United States v. Flynn, 411 F. Supp. 3d 15, 37 (D.D.C. 2019) ("persuasive authority holds that the government's production of summaries of notes and other documents does not constitute a Brady violation") (citing Van Brandy and Grunewald). The government provided all relevant information concerning the $3,600 provided for the temporary relocation of Witness-3 and is in possession of no undisclosed Brady information regarding this expense.

Defendant acknowledges that his trial counsel was aware of the $3,600 paid to Witness-3 to relocate due to safety concerns prior to Witness-3 taking the stand. Dkt. 2081 at 5. Defendant's trial counsel chose not to question Witness-3 about the payment, likely because it would have opened the door to prejudicial evidence about why the payment was made. Id. Despite having all the information needed to impeach Witness-3 -- the amount, reason and timing of the payment -- defendant seeks to compel all underlying documents concerning the threats and payment without explaining what facts relevant to the impeachment concerning the payment he expects to find. Defendant's claim that the underlying documents were "the only way" to assess the risk of questioning Witness-3 about the payment is simply an attempt to second-guess the trial decisions of defendant's trial counsel. Defendant's trial counsel was fully aware of this issue and made no additional discovery requests concerning it. There was no suppression and there was no Brady violation.

### 3. Recorded Statement of Steven Reveles

The statement of Steven Reveles is entirely irrelevant. On September 14, 2017, law enforcement went to a hotel room looking for defendant. *See* Dkt. 2081-1, Exhibit B, at 1. When officers arrived, they found Reveles, but not the defendant. Id. Officers found significant quantities of drugs, drug paraphernalia, counterfeit U.S. currency, and several other items related to potential theft and fraud. Id. at 1-5. Later, officers interviewed Mr. Reveles about the contraband. Law enforcement wrote a detailed description of that interview. Id. at 5-8. While Mr. Reveles made many incriminating admissions, there is no indication that he knew anything about the murder or that the defendant was discussed during the interview. The report indicates that a recording was made of the 2017 interview. On October 22, 2025, the government informed the defendant that neither it nor local law enforcement possessed a copy of the recording.

As the recording is unavailable, defendant's request to compel its production is moot. Defendant also requests that the Court compel the government to "provide [an] explanation of what happened to [the recording]," essentially a civil discovery interrogatory not provided for under Rule 16. Dkt. 2081 at 10. The defendant makes this request despite acknowledging that "Mr. Reveles may not have said anything exculpatory." Id. Though the defendant alleges that Reveles claimed to have been asked about the murder, he does not allege that Reveles said anything about the murder, and the detailed report of the statement does not mention any discussion about the murder. *See* Dkt. 2081-1 at ¶ 15. Even crediting defendant Trejo's assertion that Reveles, on an unknown date and with no further detail, told him that the officers asked him about the murder, that does not establish that

Reveles said anything about the murder in response to any questioning, let alone anything exculpatory to do with defendant Trejo, or that Reveles had any basis for even knowing anything at all about the murder. All of the available information indicates that Mr. Reveles' statement is completely irrelevant. As such, there is no basis to compel the government to explain what happened to a recording that would not be discoverable if it existed.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant Trejo's motion to compel Brady material.